## CITY CLUB OF ST. LOUIS v. UNITED STATES.

District Court, E. D. Missouri, E. D. January 3, 1928.

No. 7678.

Internal revenue ⬤�czz11—Corporation organized for investigation, discussion, and improvement of municipal conditions held not a "social club or organization," within Revenue Act (Revenue Acts 1918, 1921, § 801 [Comp. St. § 6309⅝b]).

Corporation organized under Rev. St. Mo. 1899, §§ 1394–1423, for purpose of investigating, discussing, and improving municipal conditions and affairs. and maintaining quarters, consisting of several dining rooms, combination lounge and office room, kitchen, and washroom, in which quarters members met at daily luncheons to discuss public matters, particularly civic affairs, *held* not a "social club or organization," within Revenue Acts 1918, 1921, §·801 (Comp. St. § 6309⅝b), taxing social, athletic, and sporting clubs on basis of amount of dues or membership fees or initiation fees received, in view of Regulations of Treasury Department No. 43, pt. 2; a "social club" being an association organized for the purpose of enabling its members to meet on equal terms and to cultivate good fellowship and friendly intercourse.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Social Club.]

At Law. Action by the City Club of St. Louis against the United States. Judgment for plaintiff.

Carroll Harlan (of Cobbs, Logan & Alexander), of St. Louis, Mo., for plaintiff.

Ralph S. Scott, of Washington, D. C., Sp. Sol., for the United States.

DAVIS, District Judge. This is an action to recover taxes paid by the plaintiff during the years of 1921 to 1923, inclusive. These taxes were levied and collected under section 801 of the Revenue Acts of 1918 and 1921 (Comp. St. § 6309⅝b). The statute reads as follows:

"Sec. 801. That from and after January 1, 1922, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 801 of the Revenue Act of 1918, a tax equivalent to 10 per centum of any amount paid on or after such date, for any period after such date, (a) as dues or membership fees (where the dues or fees of an active resident annual member are in excess of $10 per year) to any social, athletic, or sporting club or organization; or (b) as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees (not including initiation fees) of an active resident annual member are in excess of $10 per year; such

taxes to be paid by the person paying such dues or fees: Provided, That there shall be exempted from the provisions of this section all amounts paid as dues or fees to a fraternal society, order, or association, operating under the lodge system. In the case of life memberships a life member shall pay annually, at the time for the payment of dues by active resident annual members, a tax equivalent to the tax upon the amount paid by such a member, but shall pay no tax upon the amount paid for life membership."

The question here to be determined is whether the plaintiff was a social club or organization within the meaning of this statute. Regulations No. 43, part 2, of the Treasury Department, define what is meant by a social club as follows:

"*Social Clubs.* Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the act, unless its social features are not a material purpose of the organization, but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business. The tax does not attach to dues or fees of a religious organization, singing society, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but, if the social features are a material purpose of the organization, then it is a 'social * * * club or organization' within the meaning of the act. An organization that has for its exclusive or predominant purpose religion or philanthropic social service (or the advancement of the business or commercial interests of a city or community) is so clearly not a 'social * * * club or organization' that its possession and use of a building furnished with social club facilities does not render taxable dues or fees paid to it. Most fraternal organizations are in effect social clubs, but if they are operating under the lodge system payments to them are expressly exempt."

The plaintiff organization is a Missouri corporation organized in 1910, under article 11, chapter 12, of the Revised Statutes for the year of 1899. These statutes provided for the organization of benevolent, religious, scientific, fraternal, beneficial, educational, and miscellaneous associations. The constitution of plaintiff sets out the purpose of the organization in this language:

"Article II. The objects of said association are as follows: The investigation, discussion, and improvement of municipal conditions and affairs in the city of St. Louis, and the establishment and maintenance of clubrooms, library and other facilities of a social club for the use of men who desire to co-operate in the accomplishment of this purpose by nonpartisan and practical methods: Provided, however, that the organization as such shall never be committed to the indorsement or advocacy of any individual nor of any particular measure or scheme."

The plaintiff corporation shortly after its organization leased the top floor of the Board of Education Building in the city of St. Louis, and maintained its quarters there throughout the period with which we are concerned. These premises consisted of one large dining room, two smaller dining rooms, a combination lounge and office room, kitchen, and wash room. The membership of plaintiff met daily, except Sunday, in said quarters, when luncheon was served. During the time that plaintiff occupied said quarters the same were not open at night. The membership consisted of about 1,500 persons, and was fairly representative of the commercial and professional men of the city of St. Louis. The only source of income was initiation fees, dues assessed against its members, and charges made for food served at its daily luncheons. During the years 1921 to 1923, the initiation fee was $25, and the annual dues were $30.

During all the time with which we are here concerned, it was the practice of plaintiff to invite prominent persons visiting in the city, or residing in the city, to discuss some subject of current interest at the daily luncheons. These addresses took place at least once a week, and oftentimes more frequently. The organization took an active interest in public matters, particularly in civic affairs of the community. It advocated and assisted in the establishment of the "City Plan Commission"; organized and conducted the "Know St. Louis" campaign; caused groups of its members to visit various public institutions, City Hospital, City Zoo, Municipal Jail, and places of like nature. The club did much to cultivate friendly feeling between other municipalities in this section and the city of St. Louis. It was instrumental in creating the Board of Freeholders, which drafted a new charter that was adopted by the city of St. Louis; assisted in the establishment of the St. Louis Style Show; co-operated in the production of the St. Louis Pageant and Masque, out of

which grew the Municipal Theater. The foregoing are some of the activities in which the plaintiff corporation engaged.

The statute provides a tax upon dues paid to social clubs and organizations. The term "social club" has not often been defined. It evidently has no peculiar legal meaning. An association organized for the purpose of enabling its members to meet on equal terms, and to cultivate good fellowship and friendly intercourse, is, we think, a social club. These results are to a greater or less degree brought about, wherever human beings meet, whether at home or abroad, at work or in play. But it is characteristic of a social club that it has for its primary purpose the cultivation of such companionable relations.

The avowed object of the plaintiff corporation was the "investigation, discussion, and improvement of municipal conditions and affairs in the city of St. Louis." The facilities provided were those necessary to accomplish that purpose. The constitution adopted is not to be considered as final, but it is persuasive, when the whole history of the organization is consistent therewith. The quarters of the City Club, during the time with which we are here concerned, were no more adequate for social intermingling of men than any public dining room. The members came for lunch, as they would to any public place. They appeared in greater numbers when the lunch was followed by an address. For the purpose of addressing these meetings, many eminent men appeared. The dining room of the City Club became what it was planned to be, the chief forum for public discussion of current events in the city.

The club displayed an active interest in public affairs, and particularly did it concern itself with the cultural, economic, and governmental conditions existing in St. Louis. The testimony offered conclusively indicates that the organization actively participated in many public and philanthropic movements. The evidence submitted is convincing that the predominant purpose of the plaintiff corporation was not social, but civic. The social features were subordinate and incidental to the furtherance of its main function, that of disseminating authoritative information upon current questions, and particularly of improving municipal conditions in St. Louis. The plaintiff was not a social club or organization, as that term is·used in the Revenue Act.

Judgment for plaintiff. Counsel may tender an order for approval, signature, and entry.