The **DOWNTOWN CLUB OF DALLAS,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16015.

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1957.

**160**

Oliver W. Hammonds, Dallas, Tex., George E. Ray, Ray & Hammonds, Dallas, Tex., for appellant.

Louise Foster, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington D. C., John C. Ford, Asst. U. S. Atty., Dallas, Tex., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellee.

Before CAMERON, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

The Commissioner of Internal Revenue ruled that The Downtown Club of Dallas, Texas, was a social club within the meaning of 26 U.S.C.A. (I.R.C.1939) § 1710, which provides:

"There shall be levied, assessed, collected, and paid—

"(1) *Dues or membership fees.* A tax equivalent to 20 per centum of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year.

"(2) *Initiation fees.* A tax equivalent to 20 per centum of any amount paid as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees, not including initiation fees, of an active resident annual member are in excess of $10 per year."

The tax against the Club under the quoted statutory provisions was assessed and paid. Suit was brought by the Club for a refund of the tax. It asserted it was not a social club within the meaning of the statute.

Property owners in that part of Dallas, Texas, known as the downtown area had organized the Downtown Property Owners Association to promote the business and industry of the area and to prevent the shift of these activities to other sections of the City. A group of the members of the Association decided to organize a club to provide a place to meet in the area, using the meals, as one witness put it, "as bait, to get people to

come there and eat, * * * to bring the business and professional men to this central area." The plaintiff, The Downtown Club of Dallas, was organized in 1946 as a non-profit corporation under the laws of Texas. Among its purposes, as set forth in its charter and by-laws were the bringing together of business leaders of various industries and professions, and promoting activities of philanthropic and business organizations. It was provided by the charter that the Club should have no social, athletic or sporting events except such as were subordinate and incidental to the active furtherance of the predominant purposes of the Club.

The Club was granted an exemption from Federal income taxes as a business league, under 26 U.S.C.A. (I.R.C.1939) § 101(7). The Club established and maintained club rooms in the Texas Bank Building in Dallas consisting of an entrance hall, cloakroom, a lounge in which were kept newspapers and periodicals, and a television set. There was a main dining room seating 100 to 125 people, two small private dining rooms, a kitchen, a washroom for men and dressing rooms for employees. The Club had nearly 300 resident members, 46 nonresident members, and 22 junior members. Among the members were a diplomat, two of the clergy, and one from the armed services. The Club served luncheon each week-day with an average of about 90 being present for the noonday meal. Originally dinners were served on Thursday evenings. The Club's facilities were available to group meetings under the sponsorship of members. On football days busses were chartered for transporting Club members and their guests to and from the stadium. On week-days ladies used the Club only when participating in group meetings. They were welcome on Saturdays when accompanied by a member. They were included in the football expeditions. Liquor lockers were available to members from which liquor was served by club attendants. Dances and cocktail parties were held under sponsorship of individual members or of groups to which some club members belonged.

From the minutes of the Club it appeared that a hostess had been secured for family nights, that plans were made for ladies' nights with style shows, consideration was given to permitting ladies to use the Club for luncheon, a suggestion was made that the membership be advised that the Club could use more special parties, bingo games were discussed as a Thursday night attraction, and the installation of a bar was proposed. The Club had reciprocal privileges with twenty-one clubs in other cities. It was urged that the Club's functioning was responsible for many developments in the downtown area of Dallas but beyond the statements of witnesses that such matters were discussed at meetings there were no facts shown of the Club's participation in the activities which resulted in the civic developments.

The District Court concluded that the Club was a social club and as such was liable for the dues and admissions taxes. Downtown Club of Dallas v. United States, 138 F.Supp. 860. Judgment was entered for the United States. We are of the opinion that the judgment was correct and should be affirmed. The promotion of the Club by the Downtown Property Owners Association for the furtherance of the objects of the Association would not cloak the Club with the immunity which the Association might have. The avowal of civic purposes and the disclaimer of social objectives cannot prevail over the functions and activities as carried on by the Club. As in many another controversy the result must depend upon what was done rather than upon that which was said. Town Club of St. Louis v. United States, D.C., 60 F.2d 628, affirmed 8 Cir., 68 F.2d 620; Fleming v. Reinecke, 7 Cir., 52 F.2d 449, 80 A.L.R. 1293, certiorari denied 284 U.S. 689, 52 S.Ct. 266, 76 L.Ed. 582; Aldine Club v. United States, 65 Ct.Cl. 315.

The regulations implementing the statute provide that:

"Sec. 101.24 *Determination of Character of Club.*—The purposes and activities of a club or organization and not its name determine its character for the purpose of the tax. Every club or organization having social, athletic, or sporting features is presumed to be included within the meaning of the phrase 'any social, athletic, or sporting club or organization', until the contrary has been proved, and the burden of proof is upon it. Every such club or organization, therefore, unless it falls within the express exemption of the Code (see section 101.30), must collect, return, and pay over the tax imposed by the Code, unless and until it has satisfied the Commissioner of Internal Revenue that it is not in fact 'social, athletic, or sporting' within the meaning of the Code, and as defined in these regulations. If any such club or organization claims that it is not in fact, 'social, athletic, or sporting,' it shall submit to the collector a copy of its charter or constitution and by-laws, together with a statement showing its actual purposes, activities, practices, and facilities, the character of its expenditures and such other evidence as may be requested. Upon consideration of the evidence submitted the collector will determine, if he can do so, whether or not such club or organization comes within the provisions of the Code. * * * Collectors will keep a list of all clubs and organizations held not to be 'social, athletic, or sporting' clubs and organizations, to the end that they may occasionally inquire into their status and ascertain whether the conditions upon which their exemption was predicated remain unchanged. If the collector decides that the club or organization comes within the provisions of the Code and the club or organization is not satisfied with his decision, it may request that the matter be referred to the Commissioner for a ruling.

"Sec. 101.25 *Social Clubs.*—Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the Code, unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as for example, religion, the arts, or business. The tax does not attach to dues or fees of a religious organization, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but if the social features are a material purpose of the organization it is a 'social * * * club or organization' within the meaning of the Code." Treas. Reg. 43 (1941 Ed.) §§ 101.24, 101.25.

The appellant stresses those decisions holding that particular organizations were operated for business purposes and points out the features which such organizations have in common with it. The Government draws parallels between the factual situation of this case with those of the decided cases wherein it has prevailed. Each of the parties attempts to distinguish the cases relied upon by the other.

■ It has been said that the term "social club" has no peculiar legal meaning. City Club of St. Louis v. United States, D.C., 24 F.2d 743. So also it has been said that no exact definition can be given to the word "social". Army & Navy Club of America v. United States, 53 F.2d 277, 72 Ct.Cl. 684, certiorari denied 285 U.S. 548, 52 S.Ct. 405, 76 L.Ed. 939. And it has also been said that the word "social", as used in the statute, "necessarily becomes a term of art, even though an elusive one". Duquesne Club v. Bell, 3 Cir., 127 F.2d 363, 365, 143 A.L.R. 1377, certiorari denied 317 U.S. 638, 63 S.Ct. 30, 87 L.Ed. 514, rehearing

denied 317 U.S. 706, 63 S.Ct. 152, 87 L. Ed. 563. It is generally held that the question as to whether or not a club is "social", as that term is used in § 1710, supra, depends upon the extent and nature of the social activities. If a material purpose is social, the organization is a social club, even though it has other important objectives and activities. On the other hand, if the social features are subordinate and incidental to the furtherance of other activities and are not necessary to its paramount non-social purposes and activities, the organization is not to be classed as a social club. Reg. 43 § 101.25, supra, Tidwell v. Anderson, 2 Cir., 72 F.2d 684; Chicago Engineers' Club v. United States, 9 F.Supp. 680, 80 Ct.Cl. 615; Town Club of St. Louis v. United States, 8 Cir., 68 F.2d 620; Army & Navy Club of America v. United States, supra.

■ The sponsoring of the appellant, Downtown Club, by the Downtown Property Owners Association for the furtherance of the sponsor's purpose of the betterment of the downtown merchandising area of Dallas as a business district is not persuasive as to the character of the Club. The Association's need for a place where men might meet over a luncheon table might well be met by a social club. Cf. Fleming v. Reinecke, supra. The facts and circumstances of each case are different from those in any other and each must be decided on its own facts. Similar in factual situation is Uptown Club of Manhattan v. United States, 83 F.Supp. 823, 113 Ct.Cl. 422, certiorari denied 338 U.S. 823, 70 S.Ct. 70, 94 L.Ed. 500. The Uptown Club was organized by the leaders of the Fifth Avenue Association, which was composed of merchants along Fifth Avenue in New York City, so that the members might meet, have lunch and discuss matters of common interest. Its members, for the most part, had their business addresses in the Grand Central Zone of New York City. Although ladies were permitted the use of the Club on a restricted basis and a bar was operated, there were no games, no radio, no gymnasium, and the Club had no dances, lectures, concerts or open house. It had reciprocal arrangements with two other clubs, one in downtown New York and the other in Philadelphia. No predominant business purpose was apparent and the tax was sustained. See also Turks Head Club v. Broderick, 1 Cir., 166 F.2d 877; Railroad-Machinery Club of New York v. United States, 95 F.Supp. 822, 118 Ct.Cl. 542; Arkwright Club of City of New York v. United States, 117 F.Supp. 411, 127 Ct.Cl. 247. Other cases where similar problems have been considered are cited in 47 C.J.S., Internal Revenue, § 531c, p. 766, C.C.H. Supp. Vol. 62,270, Par. 41,911, and in annotations at 86 L. Ed. 626, 80 A.L.R. 1296, and 143 A.L.R. 1381.

■ We find nothing in the record to show either effort toward or the accomplishment of any substantial objective for the improvement of the business area in which the appellant club was located. Such activities as occurred were incidental, minor and insubstantial. Here we have a place to meet with friends, eat, watch television, relax in the lounge, and drink if the member be so minded and have liquor in his locker. Weekly family nights were held and busses operated to football games. The District Court found the predominant purpose of the appellant was social. The District Court's determination that the appellant is subject to the tax is free from error. Its judgment is

Affirmed.